UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA BOGGS, | |
| Plaintiff, | CIVIL ACTION NO. 1:13-CV-00111 |
| v. | (MEHALCHICK, M.J.) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

**MEMORANDUM OPINION**

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff's claim for disability insurance benefits under the Social Security Act. The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 17; Doc. 18). For the reasons expressed herein, the Commissioner's decision shall be **REVERSED** and **REMANDED** for further proceedings.

I. PROCEDURAL HISTORY

On September 7, 2010, Plaintiff Barbara Boggs filed an application for disability insurance benefits alleging that she became disabled on October 2, 2007, due to severe bilateral

---

[1] This complaint in this matter originally designated Michael J. Astrue, Commissioner of Social Security at the time, as the named defendant. Shortly after the complaint was filed, Mr. Astrue resigned from the position. He was succeeded by Carolyn W. Colvin on February 14, 2013, when she became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Ms. Colvin has been automatically substituted as the defendant in this case. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (last sentence).

hearing loss and irritable bowel syndrome.[2] Ms. Boggs's initial application was denied on December 2, 2010, and she timely requested a hearing before an administrative law judge ("ALJ"). On April 12, 2012, Ms. Boggs appeared with her attorney for an administrative hearing before ALJ Sharon Zanatto. On June 14, 2012, they appeared before the ALJ for a supplemental hearing. On June 21, 2012, the ALJ denied Ms. Boggs's application for disability insurance benefits, finding that she was capable of performing her past relevant work as a cashier/stocker. Ms. Boggs requested administrative review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review. The Appeals Council denied her request for review on November 15, 2012. This makes the ALJ's June 21, 2012, decision the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). 20 C.F.R. § 404.981.

Ms. Boggs appealed the Commissioner's final decision by filing the complaint in this action on January 15, 2013. (Doc. 1). The Commissioner filed her answer to the complaint on March 29, 2013. (Doc. 8). Together with her answer, the Commissioner filed a transcript of the administrative record in Ms. Boggs's case. (Doc. 9). The matter is now fully briefed by the parties and ripe for decision. (Doc. 14; Doc. 13; Doc. 19).

## II. STANDARD OF REVIEW

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200

---

[2] In her original application, Ms. Boggs alleged a disability-onset date of November 1, 2002. She subsequently amended her alleged onset date to October 2, 2007, the date when she was formally diagnosed with severe bilateral hearing loss.

(3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Ms. Boggs is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any

3

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[3] that makes it impossible to do his or her previous work or any other substantial gainful activity[4] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[5] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[6] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520. The claimant bears the initial

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[5] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2).

burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Mason*, 994 F.2d at 1064.

### III. THE ALJ'S DECISION

In her June 21, 2012, decision, the ALJ determined that Ms. Boggs last met the insured status requirement[7] of the Social Security Act on December 31, 2007. (Admin. Tr. 21, Doc. 9-2, at 22). At step one of the five-step process, the ALJ determined that Ms. Boggs did not engage in any substantial gainful activity between her alleged onset date of October 2, 2007, and her date last insured of December 31, 2007. (Admin. Tr. 21, Doc. 9-2, at 22). At step two, the ALJ determined that, as of her date last insured, Ms. Boggs had a severe impairment: obliterative otosclerosis with bilateral hearing loss. (Admin. Tr. 21, Doc. 9-2, at 22). The ALJ found that the claimed impairment of irritable bowel syndrome was medically determinable but not severe. (Admin. Tr. 21–22, Doc. 9-2, at 22–23). The ALJ also considered several other health conditions found in the claimant's medical history, finding each to be non-severe. (Admin. Tr. 22, Doc. 9-2, at 23). At step three, the ALJ determined that Ms. Boggs did not have an impairment, or combination of impairments, that met or medically equaled the severity of any

---

[7] "Under 20 C.F.R. § 404.131, [a claimant] is required to establish that he became disabled prior to the expiration of his insured status." *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 22, Doc. 9-2, at 23).

Prior to step four, the ALJ determined Ms. Boggs's RFC based on the evidence of record, including the claimant's testimony, the findings and opinions of treating and examining physicians, the opinions of a non-examining state agency medical consultant, and the opinions of a non-examining physician who provided testimony at the administrative hearing. The ALJ determined that, through her date last insured, Ms. Boggs retained the RFC to perform a limited range of medium work, as defined in 20 C.F.R. § 404.1567(c). (Admin. Tr. 22–23, Doc. 9-2, at 23–24). Specifically, the ALJ found that:

> The claimant is capable of hearing warning signals. The claimant is capable of occasionally using the telephone and frequently communicating orally with others, primarily in person. The claimant is limited to working in quiet, very quiet and moderately quiet work environments. The claimant is capable of orally communicating for 50% or less of the workday. The claimant may need to take 2 unscheduled bathroom breaks up to 15 minutes in duration, in addition to normal breaks throughout the workday.

(Admin. Tr. 22-23, Doc. 9-2, at 23–24).

Pursuant to Social Security Ruling 96-7p, 1996 WL 374186, the ALJ considered Ms. Boggs's testimony and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Admin. Tr. 24, Doc. 9-2, at 25).

Pursuant to Social Security Ruling 96-6p, 1996 WL 374180, the ALJ considered a state agency assessment of Ms. Boggs's RFC, prepared by a medical consultant who is also an expert in Social Security disability programs, as the medical opinion of a non-examining medical source. (Admin. Tr. 24, Doc. 9-2, at 25). On December 2, 2010, medical consultant Maura

Smith-Mitsky, M.D., found that Ms. Boggs suffered from severe bilateral conductive hearing loss due to obliterative otosclerosis in both ears. (Admin. Tr. 392, Doc. 9-7, at 82; Admin. Tr. 394, Doc. 9-7, at 84). The medical consultant further found that Ms. Boggs was required to avoid concentrated exposure to extreme heat due to her obesity. (Admin. Tr. 392, Doc. 9-7, at 82). Otherwise, the medical consultant found that Ms. Boggs was capable of performing the full range of medium work. (*See* Admin. Tr. 390–92, Doc. 9-7, at 80–82). Ultimately, the ALJ afforded "significant weight" to the state agency medical consultant's opinion. (Admin. Tr. 24, Doc. 9-2, at 25).

Pursuant to 20 C.F.R. § 404.1527(c), the ALJ considered the medical opinion of Peter DeMarco, M.D., a physician board-certified in diseases of the ears, nose, and throat. (Admin. Tr. 24, Doc. 9-2, at 25; Admin. Tr. 39, Doc. 9-2, at 40). On June 14, 2012, Dr. DeMarco testified by telephone at the supplemental administrative hearing in this case. (Admin. Tr. 39–52, Doc. 9-2, at 40–53).Based upon his examination of the claimant's medical records, Dr. DeMarco testified that Ms. Boggs has a significant bilateral hearing impairment, which prevents her from working in environments with significant background noise, and that her impairment further prevents her from performing work that requires her to engage in a significant amount of communication. (Admin. Tr. 41–42, Doc. 9-2, at 42–43). Dr. DeMarco testified that her limitations would prevent Ms. Boggs from working in a noisy warehouse or factory setting, but it would not prevent her from working in a moderately quiet office or retail store environment, so long as her job does not require her to wait on customers or perform other tasks requiring significant communication. (Admin. Tr. 46–49, Doc. 9-2, at 47–50). Ultimately, the ALJ afforded "significant weight" to Dr. DeMarco's medical opinion. (Admin. Tr. 24, Doc. 9-2, at 25).

The ALJ also considered the opinion of Brian K. Flowers, M.D., a physician specializing in the treatment of disorders of the ears, nose, and throat. (Admin. Tr. 25, Doc. 9-2, at 26). Dr. Flowers examined Ms. Boggs on October 2, 2007, diagnosing her with bilateral conductive hearing loss secondary to obliterative otosclerosis. (Admin. Tr. 318–19, Doc. 9-7, at 8–9). On April 18, 2012, he provided the claimant's counsel with a letter in which he confirmed that he last saw Ms. Boggs when he diagnosed her with severe bilateral hearing loss in 2007, and opining that:

> She has very severe hearing loss. It would make it very difficult for her to work in any environment where hearing would be essential. Certainly hazardous environments, such as with forklifts or other heavy machinery, would be difficult for her to be employed in, secondary to the risk. It is very difficult for her to converse with others given her severe hearing loss. Occupations with a good deal of background noise may be adverse environments for her as well. I would say that working as a cashier or a laborer in a warehouse would probably be unwarranted, and unlikely to be possible for someone with such severe hearing loss.

(Admin. Tr. 397, Doc. 9-7, at 87). Noting that Dr. Flowers had only examined Ms. Boggs on a single occasion and that he had not had the opportunity to observe her functional limitations over an extended period, the ALJ afforded "limited weight" to Dr. Flowers's opinion. (Admin. Tr. 25, Doc. 9-2, at 26).

At step four of the five-step process, the ALJ determined that Ms. Boggs was capable of performing past relevant work as a cashier/stocker. (Admin. Tr. 25, Doc. 9-2, at 26). The ALJ found that, in the past, Ms. Boggs had worked as a retail cashier, as a retail sales manager, and as a cashier/stocker. (Admin. Tr. 26, Doc. 9-2, at 27). Based on Ms. Boggs's RFC, her past relevant work, and the testimony of a vocational expert, the ALJ determined that Ms. Boggs was capable of performing her past relevant work as a cashier/stocker. (Admin. Tr. 26, Doc. 9-2, at 27).

As a result of her findings at step four, the ALJ concluded that Ms. Boggs was not

8

disabled at any time between her alleged onset date of October 2, 2007, and her date last insured of December 31, 2007. (Admin. Tr. 26, Doc. 9-2, at 27).

## IV. ANALYSIS

Ms. Boggs asserts that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to give appropriate weight to the opinion of Dr. Flowers, whom Ms. Boggs contends is a treating physician; and (2) the ALJ erred in finding that Ms. Boggs was capable of performing her past work as a cashier/stocker despite her severe bilateral hearing loss, which prevents her from performing the cashier aspects of the job.

### A. WEIGHT GIVEN TO OPINION OF DR. BRIAN FLOWERS

Ms. Boggs contends that the ALJ failed to give appropriate weight to the opinion of Dr. Flowers. In particular, she argues that Dr. Flowers was her treating physician, and thus, under the applicable regulations, his medical opinion was entitled to controlling weight. In the alternative, she argues that, even if Dr. Flowers's opinion was not entitled to controlling weight, it was entitled to more than the "limited weight" afforded to it by the ALJ.

To be a "medical opinion" entitled to "controlling weight" an opinion must come from a "treating source," it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it must be "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1527(c)(2); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2. Under the Social Security regulations, a "treating source" is defined as a "physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. As to what constitutes an "ongoing treatment relationship," the regulation states:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. § 404.1502.

If not well-supported by medically acceptable clinical and diagnostic techniques or inconsistent with other substantial evidence in the case record, a treating source medical opinion is nevertheless entitled to deference. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *4. Ordinarily, it will be afforded "great weight." *See* Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2; *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). *See generally* 20 C.F.R. § 404.1527(c) (detailing factors considered in evaluating weight given to a medical opinion).

Without citing to any legal authority or any evidence in the record before the Court, Ms. Boggs contends that her evaluation by a specialist in disorders of the ears, nose, and throat on a single occasion was "typical for her needs at the time," and thus Dr. Flowers should be considered a treating source and his opinion given controlling weight under the treating physician rule. But the rationale for giving controlling weight to a treating source's medical opinion is that a treating physician is the medical professional "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2); *see also Morales*, 225 F.3d at 317 ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.") (internal quotation marks omitted). Dr. Flowers's opinion, formed on the basis of a single visit, simply could not establish a "detailed, longitudinal picture" of Ms.

Boggs's medical impairments, and thus it is not entitled to controlling weight. *See Lamacchia v. Astrue*, No. 02:11-cv-00498, 2012 WL 1189118, at *10 (W.D. Pa. Apr. 9, 2012) (finding opinion of physician rendered after one visit could not establish the 'detailed, longitudinal picture" of claimant's impairments that provides rationale for according controlling weight to treating sources); *see also Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011) ("A single evaluation by a nontreating [physican] is generally not entitled to controlling weight."); *Morris v. Barnhart*, 78 Fed. App'x 820, 823 (3d Cir. 2003) (finding opinion of psychiatrist who saw claimant "on only three or four occasions over two or three months" was not entitled to presumption of controlling weight under treating physician rule); *Shore v. Colvin*, No. 3:12-CV-00441, 2013 WL 5439142, at *14 (M.D. Pa. Sept. 27, 2013) (finding the opinion of a consulting physician who only had contact with the claimant on one occasion was not entitled to controlling weight nor more weight than the opinion of a state agency physician which was based on review of the claimant's medical records).

Moreover, Dr. Flowers's opinion as to whether Ms. Boggs is capable of "working as a cashier or a laborer in a warehouse" is not a medical opinion, but rather an opinion on whether Ms. Boggs is disabled, an issue expressly reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1); *Dixon v. Comm'r of Soc. Sec.*, 183 Fed. App'x 248, 251 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance."); *Snow v. Astrue*, Civil Action No. 12-5 Erie, 2013 WL 501377, at *8 (W.D. Pa. Jan. 15, 2013) ("The ultimate determination as to whether a claimant is disabled is reserved to the Commisioner."). "Medical sources . . . sometimes offer opinions . . . about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the

Commissioner. . . . [T]hey can never be entitled to controlling weight or given special significance." Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *5; *see also* Dixon, 183 Fed. App'x at 252 (finding that treating source opinions stating that a claimant was unable to do specific jobs "reflected the treating professionals' opinions on disability, [and] they were properly afforded no special significance"); Snow, 2013 WL 501377, at *8 ("Since medical doctors typically lack the vocational expertise needed to ascertain whether an individual's limitations would preclude the performance of specific jobs, their opinions as to whether a claimant is 'disabled' carry little weight. . . . . Questions pertaining to employer expectations are more appropriately addressed by a vocational expert.").

Even though Dr. Flowers's opinion is not a treating source medical opinion entitled to controlling weight, his opinion is nevertheless relevant evidence that must be considered and weighed by the ALJ. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored."); Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *7 n.8; *Ray v. Astrue*, 649 F. Supp. 2d 391, 402 n.26 (E.D. Pa. 2009) ("Evidence that does not deserve great weight does not necessarily deserve no weight at all."). The following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5); *see also* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR

404.1527(d) . . . .").[8] None of these factors may be omitted or disregarded by the ALJ in considering the weight of the opinion. *See Casillas v. Astrue*, 671 F. Supp. 2d 635, 643–44 (E.D. Pa. 2009) (stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(c) in determining what weight to give a medical opinion); *Waldron v. Astrue*, No. 1:07-CV-2040, 2008 WL 4452350, at *1 (M.D. Pa. Sept. 30, 2008) (same). In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his or her attention. 20 C.F.R. § 404.1527(c)(6).

In determining the amount of weight to give to Dr. Flowers's opinion, the ALJ here clearly articulated her consideration of factors (1) and (2), expressly referencing the fact that Dr. Flowers's opinion on specific occupations was based on a single examination of Ms. Boggs. (Admin. Tr. 25, Doc. 9-2, at 26). With respect to factor (3), the ALJ's decision clearly references Ms. Boggs's treatment records at Dr. Flowers's medical practice, and her detailed summary of Dr. Flowers's findings clearly indicates her full consideration of the medical evidence upon which his opinion was based. (Admin. Tr. 24 (citing Exhibit 1F), Doc. 9-2, at 25). With respect to factor (4), the ALJ's decision clearly documents her consideration of the consistency of Dr. Flowers's opinion with the record as a whole, comparing and contrasting his findings with the opinion of Dr. DeMarco, also a specialist in disorders of the ears, nose, and throat. (Admin. Tr. 24–25, Doc. 9-2, at 25–26). With respect to factor (5), the ALJ's decision explicitly references Dr. Flowers's specialization in disorders of the ears, nose and throat, and the treatment records referenced therein likewise clearly identify his specialization. (Admin. Tr.

---

[8] The Court notes that 20 C.F.R. § 404.1527 was recently amended, with the subsection formerly labeled as § 404.1527(d) being renumbered as § 404.1527(c), without any substantive change. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 223, 2012) (codified at 20 C.F.R. pts. 404 and 416).

24, Doc. 9-2, at 25; Admin. Tr. 312–19, Doc. 9-7, at 2–9). Finally, the Court infers an additional factor that the ALJ appears to have considered, implicit in her recitation of the dates of Dr. Flowers's treatment of Ms. Boggs (October 2, 2007) and the date of his opinion (April 18, 2012): the significant lapse of time between Dr. Flowers's examination of Ms. Boggs and his opinion, provided nearly five years later. (Admin. Tr. 44, Doc. 9-2, at 45). *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (noting that the fact that a treating physician's opinion was communicated one year after he last treated the claimant could diminish the weight given to that opinion).

Accordingly, the Court finds that there is substantial evidence in the administrative record to support the ALJ's finding that Dr. Flowers's opinion with respect to whether Ms. Boggs is capable of "working as a cashier or a laborer in a warehouse" was entitled to "little weight," and her determination of the weight given to Dr. Flowers's opinion was adequately explained and otherwise based upon a correct application of relevant law. *See generally Dixon*, 183 Fed. App'x at 251–52 (giving medical source opinions on disability "no special significance"); *Snow*, 2013 WL 501377, at *8 (giving medical source opinion on disability "little weight").

### B. Ms. Boggs's Ability to Perform Her Past Work

Ms. Boggs contends that the ALJ erred in finding her capable of performing past relevant work at step four. In particular, she argues that the evidence of record does not support the ALJ's finding that she could perform her past work as a cashier/stocker because her severe bilateral hearing loss prevents her from performing the cashier aspects of that job.

At step four of the five-step sequential evaluation process, an ALJ must determine whether the claimant is able to do past relevant work, considering his or her residual functional

capacity. 20 C.F.R. § 404.1520(b).

> This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Bennett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000).

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*,[9] etc., on the requirements of the work as generally performed in the economy.

Soc. Sec. Ruling 82-62, 1982 WL 31386, at *3; *see also* 20 C.F.R. § 404.1520(b)(2).

In evaluating this evidence, the ALJ must consider whether "the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it" or whether "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." Soc. Sec. Ruling 82-61, 1982 WL 31387, at *1–*2. The DOT may be relied upon "to define the job as it is *usually* performed in the national economy."

---

[9] The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles* (4th rev. ed. 1991) ("DOT"), published by the United States Department of Labor. *See* 20 C.F.R. § 404.1566(d)(1). Moreover, Social Security Ruling 00-4p provides that "[o]ccupational evidence provided by a [vocational expert] or [vocational specialist] generally should be consistent with the occupational information supplied by the DOT." Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *2.

Soc. Sec. Ruling 82-61, 1982 WL 31387, at *2 (emphasis in original). "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job, but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" Soc. Sec. Ruling 82-61, 1982 WL 31387, at *2.

Here, the ALJ first found that Ms. Boggs retained the RFC to perform medium work, except insofar as her hearing impairment limited her to occasional oral communication with others (50% or less of the workday), primarily in person, to working in very quiet, quiet, or moderately quiet work environments, and to positions permitting her to take two unscheduled bathroom breaks of up to fifteen minutes in duration in addition to normal breaks throughout the day. (Admin. Tr. 22–23, Doc. 9-2, at 23–24).

The ALJ next evaluated the demands of Ms. Boggs's past relevant work. The ALJ found that Ms. Boggs had past relevant work as a "retail cashier," referencing the DOT code for the position of "cashier-checker," DICOT 211.462-014, 1991 WL 671841, actually performed by Ms. Boggs at the medium, semi-skilled level and generally performed in the national economy at the light, semi-skilled level.[10] The ALJ found that Ms. Boggs had past relevant work as a

---

[10] Under the Social Security Act, all occupations are classified as "sedentary work," "light work," "medium work," "heavy work," or "very heavy work." 20 C.F.R. § 404.1567. "Sedentary work" is defined by the regulations as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). "Light work" is defined by the regulations as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with

*(footnote continued on next page)*

"retail sales manager," referencing the DOT code for the position of "management trainee," DICOT 189.167-018, 1991 WL 671497, actually performed by Ms. Boggs and generally performed in the national economy at the light, skilled level. The ALJ found that found that Ms. Boggs had past relevant work as a "cashier/stocker," referencing the DOT code for the position of "stock clerk," DICOT 299.367-014, 1991 WL 672631, actually performed by Ms. Boggs at the medium, semi-skilled level and generally performed in the national economy at the heavy, semi-skilled level. (Admin. Tr. 26, Doc. 9-2, at 27).

Finally, the ALJ compared Ms. Boggs's RFC and her past relevant work, concluding that Ms. Boggs retained the RFC necessary to perform the functions of her past relevant work as a "cashier/stocker" as actually performed by Ms. Boggs — that is, at the medium, semi-

---

some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "Medium work" is defined by the regulations as work which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "Heavy work" is defined as work which "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d). "Very heavy work" is defined as work which "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. § 404.1567(e).

Similarly, all occupations are classified as "unskilled," semi-skilled," or "skilled" work. *See* 20 C.F.R. § 404.1568. Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Semi-skilled work requires

> some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary . . . .
> 
> 20 C.F.R. § 404.1568(b).

Skilled work requires the use of judgment in "dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

17

skilled level. (Admin. Tr. 25–26, Doc. 9-2, at 26–27).

The evidence of record, however, is at odds with this conclusion. Ms. Boggs testified that, in her past employment with D.E. Jones, a thrift store, she worked as a cashier-stocker-manager, performing the duties of all three occupations at one time. (Admin. Tr. 59–60, Doc. 9-2, at 60–61). Ms. Boggs testified that, in addition to waiting on customers as a cashier, she unloaded trucks, stocked shelves, and supervised other employees. (Admin. Tr. 58–60, Doc. 9-2, at 59–61; Admin. Tr. 105, Doc. 9-2, at 106). Ms. Boggs testified that she later worked as a cashier at Kmart, a discount department store, waiting on customers at a cash register. (Admin. Tr. 98, Doc. 9-2, at 99). Ms. Boggs testified that, for a brief period while at Kmart, she worked a second job as a part-time cashier-stocker at Phar-Mor, a discount drug store, waiting on customers as a cashier and stocking shelves. (Admin. Tr. 58, Doc. 9-2, at 59; Admin. Tr. 80, Doc. 9-2, at 81).

It is clear from this testimony that Ms. Boggs's position as cashier-stocker-manager at D.E. Jones was a composite job, combining the duties of retail cashier, stock clerk, and retail sales manager. *See Garcia v. Colvin*, No. 12 C 4191, 2013 WL 3321509, at *11 n.5 (N.D. Ill. June 28, 2013) ("[I]f the ALJ can accurately describe the main duties of past relevant work only by considering multiple DOT occupations, the claimant may have performed a composite job.") (quoting the Social Security Administration's Program Operations Manual) (alterations omitted). Indeed, both vocational experts who testified before the ALJ acknowledged that the position incorporated elements of two or more occupations. (Admin. Tr. 62–64, Doc. 9-2, at 63–65; Admin. Tr. 107–08, Doc. 9-2, at 108–09). The record contains little detail about Ms. Boggs's brief stint as a part-time cashier-stocker with Phar-Mor, but her limited testimony on that position likewise suggests a composite job, combining the duties of retail cashier and stock

18

clerk. (*See* Admin. Tr. 58, Doc. 9-2, at 59; Admin. Tr. 80, Doc. 9-2, at 81). Importantly, both the vocational experts agreed that, under the RFC ultimately adopted by the ALJ, Ms. Boggs was unable to perform the duties of a cashier due to the significant amount of communication with customers required by that position. (Admin. Tr. 65–67, Doc. 9-2, at 66–68; Admin. Tr. 111–12, Doc. 9-2, at 112–13).

"[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." Soc. Sec. Ruling 82-61, 1982 WL 31387, at *2. To establish that a claimant maintains the RFC to perform past relevant work in a composite job, the evidence must establish that the claimant can perform *each job* within a composite job, whether as actually performed or as generally performed in the national economy. *Peterson v. Astrue*, No. 1:09-CV-00209, 2010 WL 3219293, at *7 (N.D. Ind. Aug. 12, 2010); *Gallant v. Astrue*, Civil No. 09-357-P-S, 2010 WL 2927263, at *5 (D. Me. July 20, 2010). An ALJ may not divide a composite job into two jobs and find the claimant capable of performing past relevant work based on the less demanding of the two jobs. *See Peterson*, 2010 WL 3219293, at *7; *Gallant*, 2010 WL 2927263, at *5; *Austin v. Astrue*, No. 2:09CV1096-SRW, 2010 WL 2868217, at *10 (M.D. Ala. July 19, 2010); *Roberts v. Astrue*, No. 8:08-CV-120-T-17EAJ, 2009 WL 722550, at *3 (M.D. Fla. Mar. 18, 2009); *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1345 (M.D. Fla. 2001); *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1371–72 (W.D. Tex. 1993); *Paige v. Bowen*, 695 F. Supp. 975, 981 (N.D. Ill. 1988). "To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act." *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985); *Byrd v. Sullivan*, Civ. A. No. 88-8425, 1989 WL 38624, at *3 (E.D. Pa. Apr. 19, 1989) (citing and

paraphrasing *Valencia*, 751 F.2d at 1086).

Accordingly, the Court finds that the ALJ's determination that Ms. Boggs retained the RFC necessary to perform her past relevant work as a "cashier-stocker" is not supported by substantial evidence. Indeed, based on the undisputed evidence in the administrative record that she is unable to perform the functions of a cashier, it is clear that Ms. Boggs has satisfied her burden at step four of demonstrating that she is unable to engage in past relevant work.

## V.  CONCLUSION

Based on the foregoing, the Commissioner's decision shall be **REVERSED** and **REMANDED** for further proceedings. On remand, the ALJ shall proceed to step five of the five-step sequential evaluation process and consider whether jobs exist in significant numbers in the national economy that the claimant could perform consistent with her RFC, age, education, and past work experience.

A remand under sentence four of 42 U.S.C. § 405(g) requires the Court to enter a separate final judgment "affirming, modifying, or reversing the decision of the Commissioner" pursuant to Rule 58 of the Federal Rules of Civil Procedure. *See Shalala v. Schaefer*, 509 U.S. 292, 296–97 (1993); *Kadelski v. Sullivan*, 30 F.3d 399, 401 (3d Cir. 1994). Accordingly, the Clerk will be directed to enter judgment reversing the decision of the Commissioner.

An appropriate order shall follow.

                                               **BY THE COURT:**

Dated: March 27, 2014                            *s/ Karoline Mehalchick*
                                                **KAROLINE MEHALCHICK**
                                                **United States Magistrate Judge**